196, (1922).] Assignment of Error—Opinion of the Court.

*Error assigned,* among others, was the decree of the court.

*J. Boyd Crumrine,* of *Acheson & Crumrine,* for plaintiff.

*Samuel L. Spyker,* Attorney for State Workmen's Insurance Fund, and with him *George E. Alter,* Attorney General, for appellee.

PER CURIAM, July 13, 1922:

The appellant at the time of entering the employ of the appellee coal company had only one eye. He lost this eye in the course of his employment, rendering him totally blind. He claimed compensation for total disability but was awarded the amount allowed for the loss of one eye.

The judgment of the court below sustaining the award of the compensation bureau must be affirmed on the opinion of the Supreme Court in Lenti v. Lucci, decided June 24, 1922, but not yet reported.

Judgment affirmed.

---

# Marcus Brothers *v.* Director General of Railroads, Appellant.

*Carriers—Railroads—Shipping regulations—Shipment of eggs—Inspection and acceptance—Twenty-four-hour limitation of time—Intervention of holidays.*

When a railroad common carrier establishes rules allowing twenty-four hours, for final inspection and acceptance by consignee, upon shipments of eggs, the carrier cannot take advantage of a delay beyond such period, caused by the fact that the carrier was observing holidays, and the consignee had no access to the goods; it having appeared that the consignee exercised due diligence and completed his inspection within 24 hours, exclusive of the holidays and Sunday which intervened.

While work is prohibited on Sunday, the observance of holidays is not compulsory.

198 MARCUS BROTHERS *v.* DIRECTOR GEN. OF R. R.

Statement of Facts—Opinion of Court below. [79 Pa. Superior Ct.

Argued May 1, 1922. Appeal, No. 59, April T., 1922, by defendant, from judgment of C. P. Allegheny County, Oct. T., 1920, No. 92, overruling motion for judgment non obstante veredicto, in the case of Jacob Marcus and Benjamin Marcus, copartners, doing business as Marcus Brothers, v. Director General of Railroads. Before OR-LADY, P. J., PORTER, HENDERSON, TREXLER, KELLER, LINN and GAWTHROP, JJ. Affirmed.

Assumpsit to recover for damages to shipment of eggs. Before MACFARLANE, J.

The facts are stated in the following opinion filed in the court below:

The verdict was for the plaintiff for $366.78, loss on eggs damaged in an interstate shipment from Chicago to the plaintiff, the consignee, in Pittsburgh, where they arrived in the yards of the defendant on Friday, August 29, 1919. The regulations of the Interstate Commerce Commission upon shipments of eggs provide that on arrival the consignee shall have the privilege, before the eggs leave the possession of the carrier, and under supervision of the carrier's representative, of lifting the lids of twenty cases and examining the top layer of eggs and if the examination shows no evidence of damage it will be considered final for the entire shipment and a good order receipt shall be required of the consignee. If the examination discloses damage, the consignee has the right to make further examination. The examination in this case on Friday, August 29th, did not disclose any damaged eggs and on Saturday, August 30th, the shipment was delivered to and accepted by plaintiff and partially unloaded. The yards closed at one-o'clock on Saturday and remained closed during Sunday and all of Monday, which was Labor Day. On Tuesday plaintiff resumed the unloading and then discovered that the bottom of crates at the ends of the car were wet from melted ice and the eggs were wet and mouldy. The verdict establishes the fact that the plaintiff gave notice

of the damage on Tuesday and made a request for an inspection. The inspector directed them to remove the eggs to their warehouse, which was done, and he inspected them there.

Rule 4 is: "Upon the discovery of eggs deteriorated by heat, cold or wet in any shipment, not later than twenty-four hours after delivery, the consignee shall be entitled to a joint examination of the entire content of the shipment to determine the damage from such cause, provided demand is made therefor within such time."

The jury was instructed that if the notice was given on Tuesday it was sufficient. This ruling was based on the fact that the defendant closed its yard on Saturday at one o'clock, the remainder of the day being a legal half holiday in Pennsylvania, Monday being Labor Day, a whole holiday.

The question is now before us on a motion for judgment n. o. v., whether the notice was too late.

We will not presume to decide whether the rule of the Interstate Commerce Commission is reasonable or not. It is not necessary to decide whether we have that right, but we doubt it. Nor do we undertake to read into the rule "except where Sundays or legal holidays intervene," but we hold that the ruling at the trial was correct for the reason that the carrier voluntarily closed its yard before it was possible for the plaintiff to discover the damage and the carrier cannot take advantage of its own act.

The Sunday law prohibits work on that day but there is no compulsion in the legislation creating holidays. The Act of February 16, 1911, section 1, P. L. 3, 5 Purd. 6358, makes Labor Day a public holiday and every Saturday after twelve o'clock noon until twelve o'clock midnight a half holiday. In Richardson v. Goddard, 23 Howard 28, Justice GRIER discusses the origin and character of holidays and, in speaking of those observed in England and other Protestant countries, he says, "These saints' days and church fasts or festivals are treated as

voluntary holidays, not as Sabbaths of compulsory rest." In the case before him the governor of Massachusetts, following the time-honored custom, issued a proclamation recommending the observance of a day of fasting, humiliation and prayer. A foreign vessel arrived in the port of Boston on the day so fixed and it was contended by the consignees that they were not bound to receive the goods on that day. The substance of the opinion is that a holiday is a privilege, not a duty, and that the transaction of business was not forbidden on that day. The reason applies here.

The regulation is intended to make certain the reasonable time of the common law. The first inspection would disclose the ordinary deterioration of eggs due to delay or heat or cold but would not disclose the wetting of eggs caused by water from melted ice used in refrigerator cars, and Rule 4 is to provide a means by which the carrier and the consignee may be protected and may arrive at an adjustment of the damage. It requires diligence in unloading and promptness in notifying, and when the consignee is not prevented by the act of the carrier in completing his work he must suffer the loss unless he complies with the rule.

June 3, 1921: Motion for judgment n. o. v. is overruled and it is directed that upon payment of the verdict fee judgment may be entered by the plaintiff against the defendant.

Verdict for plaintiff in the sum of $366.78, and judgment thereon. Defendant appealed.

*Error assigned* was the judgment of the court overruling motion for judgment non obstante veredicto.

*Robert D. Dalzell,* of *Dalzell, Fisher & Dalzell,* for appellant.—The rules of the carrier, established in conformity to the regulations of interstate commerce, must be interpreted in the first instance by the Interstate Commerce Commission, and the courts have no juris-

diction to interpret such rules: Mitchell Coal & Coke Co. v. P. R. R. Co., 230 U. S. 247; Director General of Railroads v. Cos Coal Co., 254 U. S. 498.

*Guy B. Hoge,* for appellee.—The carrier is estopped from setting up the 24-hour time limit as a defense, because it made compliance impossible.

The consignee is always entitled to a reasonable time within which to unload a shipment: United Fruit Co. v. N. Y. & Baltimore Trans. Co., 65 Atl. 415; Tellassee Falls Mfg. Co. v. W. Ry. of Ala., 128 Ala. 167.

A court has the right, and is the proper authority, to construe a tariff or regulation: Gimbel Bros. v. Barrett, 226 Fed. 623; C. R. R. of N. J. v. Hite, 166 Fed. 270; 171 Fed. 370.

PER CURIAM, July 13, 1922:

The judgment is affirmed on the opinion of the learned court below refusing defendant's motion for judgment n. o. v.

---

# In re Victor Emanuele Society of Pittsburgh.

*Corporations — Incorporated beneficial society — Dissolution — Notice—Election—Requirements.*

A petition for dissolution of an incorporated beneficial society will be refused where it appears that the resolution looking to dissolution was introduced at a meeting, without any notice having been given that such action would be taken; that there was no voting by ballot, no judges of election were appointed, and no attempt made to ascertain whether the persons who voted were entitled to vote.

Nothing will take the place of a strict compliance with the act of assembly in the government of corporations, and particularly in the matter of notice to the members of such vital action as the dissolution of the corporation.

Argued May 1, 1922. Appeal, No. 23, April T., 1922, by Victor Emanuele Society of Pittsburgh, from order of